Estate of Charles J. Nulty, Sr., Deceased, Delvina Nulty, Executrix v. Commissioner. Julius Sack v. Commissioner.
Estate of Nulty v. Commissioner
Docket Nos. 44983, 46062.
United States Tax Court
T.C. Memo 1954-22; 1954 Tax Ct. Memo LEXIS 223; 13 T.C.M. (CCH) 414; T.C.M. (RIA) 54128; April 30, 1954, Filed *223 Joseph P. Cooney, Esq., 111 Pearl Street, West Hartford, Conn., and Arthur D. Weinstein, Esq., for the petitioners. James T. Lodge, Esq., and R. Monroe Swartz, Esq., for the respondent. MURDOCK
Memorandum Opinion MURDOCK, Judge: The Commissioner determined deficiencies in income tax for 1947 of $18,877.74 in the case of Charles J. Nulty, Sr. and $22,677.47 in the case of Julius Sack. The only issue for decision is whether the Commissioner erred in determining that the partnership known as Nulty and Sack terminated on August 30, 1947 and with it its taxable year so that the shares of the two partners and the income of the partnership up to that time became distributable at that time as a part of the taxable income of each partner for the calendar year 1947. The parties have entered into a stipulation of facts which is adopted as findings of fact. The returns of Charles J. Nulty, Sr. and Julius Sack for the calendar year 1947 were filed with the collector of internal revenue for the District of Connecticut. Nulty and Sack entered into a written partnership agreement on November 4, 1943. One of its provisions was that the "partnership shall terminate upon one party *224 giving to the other six months notice in writing of his intention to terminate the partnership." It further provided that an inventory should be prepared upon termination, the debts of the partnership should be discharged and all money and other assets then remaining should be divided equally between the partners. The partnership reported income on the basis of a fiscal year ended March 31st. Nulty notified Sack by a letter dated August 5, 1947 that six months from that date "our partnership will be terminated." Nulty and Sack entered into an agreement on August 25, 1947 whereby they agreed to dissolve the partnership as of the close of business on August 30, 1947, to have an inventory and accounting of the business made and that Sack would be paid one-half of the net worth of the partnership, 75 per cent thereof one week after August 30, 1947 and 25 per cent within thirty days "after an adjustment of the accounts, insurance and outstanding liabilities of said partnership shall have been completed." All adjustments were to be made as of August 30, 1947. Nulty agreed that all active accounts were to be recognized as good and he would assume all liabilities included in the adjustment. *225 There was to be no adjustment in regard to the liquor permit. Sack agreed to file a waiver with the Liquor Control Commission "setting forth that he is no longer interested in the renewal of said liquor permit; provided, that for any reason this transfer shall not be consummated it is agreed between the parties that the said Sack has the right to remain as a partner and the liquor permit shall be reinstated as heretofore." Nulty agreed not to use the name "Sack" in connection with any wholesale liquor business in which he might engage. Sack's interest in the partnership was determined to be $126,500 and he was paid $100,000 on August 29, 1947 and $26,500 on September 22, 1947. The partnership was engaged in the wholesale liquor business on August 25, 1947 and "was the backer of a permit from the Liquor Control Commission of the State of Connecticut, and also held a Wholesaler's Basic Permit 1-P-109 and an Importer's Basic Permit 1-142, issued by the Alcohol Tax Unit of the Treasury Department." Nulty formed a corporation on August 26, 1947 to carry on the business of wholesale liquor distributor. Nulty, as authorized by the corporation, applied for a Wholesaler's Basic Permit *226 and an Importer's Basic Permit on September 5, 1947 and stated in his application that "The business is a new corporation acquired as a result of the dissolution of the partnership of Nulty and Sack." The Liquor Control Commission of the State of Connecticut acknowledged on September 8, 1947 the receipt of an application for a state permit. A Federal Wholesaler's Basic Permit and an Importer's Basic Permit were issued to the corporation on October 8, 1947 at which time the similar permits held by the partnership were cancelled. It is hereby found from the testimony of Sack that the agreement of August 25, 1947 was the result of a desire on the part of Nulty to terminate the partnership prior to the end of its fiscal year and prior to the end of the six months notice; thereafter and until February 1948 Sack continued to live in West Hartford, Connecticut, and during that time was consulted at times by Nulty in connection with the business of the corporation and concerning some claims that were not settled prior to the termination of the partnership; and Sack was not employed by the corporation and received no compensation for any advice which he may have given to the corporation during *227 that period. The Commissioner, in determining the deficiency against Nulty, increased the partnership income shown on his return by $23,076.76, representing his "distributive share of the net income of Nulty and Sack, a partnership, for the taxable year from April 1, 1947, to and including August 30, 1947, the date as of which the partnership was terminated and dissolved and upon purchase of the interest of Julius Sack by decedent the business was continued as Charles J. Nulty, Incorporated." The statement attached to the notice of deficiency mailed to Sack is not in the record and the Court is uniformed as to how the Commissioner determined the deficiency against him. The petitioners contend that the partnership continued into 1948 so that the individual partners were not required to report as income for 1947 any income of the partnership after March 31, 1947. The record clearly shows, however, that the partnership was completely and permanently terminated in 1947. It had no income and had no activities after August 1947. There is no evidence that the parties intended their partnership to continue into 1948 for any reason and certainly it did not continue into that year. The *228 evidence fails to show that the Commissioner erred in determining the deficiencies. Decisions will be entered for the respondent.